**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **ROBERT SCHWARTZ,** : | |
| : | |
| **Plaintiff,** : | |
| : | Case No. 2:07-CV-1141 |
| v. : | **JUDGE ALGENON L. MARBLEY** |
| : | **Magistrate Judge Abel** |
| **ONE EQUITY CORPORATION, et al.** : | |
| : | |
| **Defendants.** : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

Plaintiff Robert Schwartz filed this suit alleging, *inter alia*, that a criminal enterprise comprised of multiple Defendants[1] violated the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d), by perpetrating a fraudulent scheme against him and others in which the Defendants offered stock-secured loans to prospective borrowers. Once the stock was transferred, however, it was purportedly sold by the Defendants for their own benefit. Presently before the Court is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) brought by Defendants ML Financial Services, Inc., Lisa Buccellato, Strategic Alliance Group, Inc., and Rocco Pistilli (collectively the "Moving Defendants"). The Moving Defendants argue that Schwartz failed to claim a substantive violation of civil RICO § 1962(c) and that he insufficiently pled his conspiracy claim under civil RICO § 1962(d).

For the following reasons, the Court **DENIES** the Moving Defendants' motion to dismiss.

---

[1] Defendants include: Michael and Melissa Spillan; One Equity Corp.; Dafcan Finance, Inc.; Triangle Equities, Inc.; Triangle Equities Group; Hedge/Lender LLC; Roel Hoekstra; ML Financial Services, Inc.; Lisa Buccellato; Rocco Pistilli; and Strategic Alliance Group, INC.

## II. BACKGROUND

Schwartz alleges that the Defendants are operating an illegal lending scheme to defraud borrowers out of their stock holdings. Schwartz asserts that Defendants Hedge/Lender, LLC, Roel Hoekstra, ML Financial Services, Inc., Lisa Buccellato, Rocco Pistilli, and Strategic Alliance Group arrange the loan transactions and Defendants Michael and Melissa Spillan, Dafcan Finance, Inc., One Equity Corp., Triangle Equities, Inc., and Triangle Equities Group underwrite the loans, which are secured by the borrowers' stock. Schwartz contends that the Defendants tell borrowers that their stock will not be sold, except for certain small trades to ensure the liquidity of the stock or in the event of a default by the borrowers—whereas, in reality, the Defendants liquidate the stock in order to fund the borrowers' loans, unbeknownst to the borrowers and contrary to the Defendants' representations.

Schwartz applied for a loan through Defendant Hedge/Lender, LLC, in September 2007, intending to raise additional capital for his business. He was approved for a loan of $717,600, for which he put up 2.3 million shares of his stock in Nuclear Solutions, Inc., as collateral. Defendant Roel Hoekstra, a Hedge/Lender director, informed Schwartz that the source of the funds for his loan was a pension fund. Hoekstra further assured Schwartz that his Nuclear Solutions stock would not be sold so long as Schwartz did not default on his loan.

Schwartz executed the loan documents on September 12, 2007, and pursuant to Hedge/Lender's instructions, mailed them to Defendant One Equity Corp. Along with the loan documents, Schwartz forwarded a certificate for his Nuclear Solutions stock. One Equity deposited Schwartz's shares with its broker, Trading Direct, on October 1, 2007. Schwartz was told that his loan would be distributed to him by October 9, 2007.

Schwartz's loan was never distributed. On the same day that the loan was supposed to be wired to Schwartz, Trading Direct froze One Equity's account, the account into which Schwartz's stock had been deposited, because Trading Direct was named as a defendant in *Nexus Holdings v. Dafcan Fin., Inc.*, No. 07-1029 (S.D. Ohio, 2008), a related lawsuit pending in this District. Thereafter, the parties in *Nexus* reached a confidential settlement that, according to Schwartz, exhausted the assets contained in One Equity's Trading Direct account.

On October 15, 2007, Schwartz demanded the return of his stock. After a series of promises by Michael Spillan and Hoekstra that they would honor Schwartz's request, Michael Spillan ultimately admitted at the end of October that Schwartz's shares had been sold.

Schwartz filed his complaint on November 5, 2007, seeking relief under RICO against all named Defendants.

### III.  STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) is designed to test "whether a cognizable claim has been pleaded in the complaint." *Scheid v. Fanny Farmer Candy Shops, Inc.* 859 F.2d 434, 436 (6th Cir. 1988). In considering such a motion, the Court is limited to evaluating whether a plaintiff's complaint sets forth allegations sufficient to make out the elements of a cause of action. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir. 1983). Dismissal under Rule 12(b)(6) streamlines litigation by "dispensing with needless discovery and fact-finding" on claims that are legally untenable in the first place. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

All factual allegations made by a plaintiff are deemed admitted and ambiguous allegations must be construed in her favor. *Murphy v. Sofamor Danek Gp., Inc.,* 123 F.3d 394, 400 (6th Cir. 1997). Although "a complaint need not contain 'detailed' factual allegations, its '[f]actual

allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, ___US___, 127 S. Ct. 1955, 1964-65 (2007).

This liberal standard of review does require more than the bare assertion of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). Under the federal pleading requirements, a plaintiff's complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* FED. R. CIV. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what plaintiff's claim is, and the grounds upon which it rests." A complaint must contain either direct or inferential allegations with respect to all the material elements necessary to sustain a recovery under some viable legal theory. *Id*. (citations omitted).

## IV.  ANALYSIS

### A. CIVIL RICO

Schwartz asserts violations of RICO sections 1962(c) and (d) against Defendants. Section 1962(c) of Rico provides that "it shall be unlawful for any person employed by or associated with any enterprise . . . to conduct . . . such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c) (1999). "A complaint asserting a violation under 1962(c) must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, SPRL v. Imrex Co.*, 473 U.S. 479, 496 (1985). "Racketeering activity" is defined, in pertinent part, "as any act which is indictable under any of the following provisions of title 18, United State Code . . . section 1341 (relating to mail fraud), section 1343 (relating to wire fraud). . . ." *Van Dorn Co.,*

*Central States Can Co. Div. v. Howington*, 623 F.Supp. 1548, 1553 (N.D. Ohio 1985).  "A 'pattern of racketeering activity' is defined by statute as requiring at least two acts of racketeering activity," as predicate offenses, "one of which occurred after the effective date of this chapter and the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." *Id.* (citing 18 U.S.C. § 1961(5)).

Section 1962(d) of RICO states that, "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  18 U.S.C. § 1962(d) (1999).  Section 1964(c) gives a civil right of action to any individual "injured in his business or property by reason of a violation of section 1962."  18 U.S.C. §1964(c) (1999).

### B. 18 U.S.C § 1962(c)

#### 1. Justifiable Reliance

The Moving Defendants argue that dismissal is proper because Schwartz failed to allege justifiable reliance as required in a civil RICO action by a plaintiff who claims mail and/or wire fraud as the predicate act.  (Citing *Brown v. Cassens Transport Co.* 492 F.3D 640, (6th Cir. 2007)). The Supreme Court, however, specifically rejected the argument that "reliance by the plaintiff is an element of a civil RICO claim predicated on a violation of the mail fraud statute."  *Bridge v. Phoenix Bond & Indemnity Co.*, _ U.S. _; 128 S.Ct. 2131, 2139 (2008). In *Bridge*, the Court held that "a plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of [his] claim or as a prerequisite to establish proximate causation, that [he] relied on the defendant's alleged misrepresentations" so long as the plaintiff could show that it was the defendant's conduct

-5-

that proximately caused his injuries. *Id.* at 2137-45. The issue is thus not one of justifiable reliance but rather proximate cause.[2]

## 2. Proximate Cause

The Moving Defendants argue that Schwartz has not sufficiently pled proximate causation. Proximate cause is defined as "some direct relation between the injury asserted and the injurious conduct alleged." *Bridge*, 128 S.Ct. at 2142 (quoting *Holmes v. Sec. Inv. Protection Corp.*, 503 U.S. 258, 268 (1992)). The Moving Defendants argue that: (1) Schwartz has not pled that they, as opposed to their co-defendants, made *any* misrepresentations to him that injured him; and (2) the misrepresentations they allegedly made to third parties cannot be the proximate cause of Schwartz's injuries because Schwartz in no way relied on or even knew about these alleged misrepresentations when he was negotiating his loan with Defendants.

The Moving Defendants are correct in asserting that Schwartz cannot show proximate cause by alleging that the they made misrepresentations to third parties because there is no direct relationship between those misrepresentations and the harm suffered by Schwartz. Proximate cause requires a direct relationship between the injury asserted and the injurious conduct alleged. *Holmes*, 503 U.S. at 265-68. In other words, a RICO plaintiff's "injury must 'flow from the commission of the predicate acts'. . . If no injury flowed form a particular predicate act, no recovery lies for the commission of that act." *Saro v. Brown*, No. 00-5384, 2001 WL 278284 at *2, (6th Cir. Mar. 15, 2001) (quoting *Sedima, SPRL*, 473 U.S. at 497). Nowhere in Schwartz's complaint does he allege

---

[2]The Moving Defendants also argue that the misrepresentations that they are alleged to have made did not proximately cause Schwartz's injuries because these misrepresentations were made to third parties. Because this argument dove tails together with that of the Moving Defendants justifiable reliance argument, it will be addressed in section IV(B)(2).

that he considered or even knew about any misrepresentations made by the Moving Defendants to third parties when he was negotiating his loan with the Defendants.  As such, the Moving Defendants' alleged misrepresentations to others cannot be said to share any relationship, direct of otherwise, with the harm that Schwartz suffered.

Schwartz did, however, sufficiently plead that the Moving Defendants made injurious misrepresentations to him.  Specifically, the Complaint states that Defendants "ML Financial, Buccellato, Pistilli, and SAG have . . . defrauded Schwartz by use of the mails and interstate wire facilities during the course of their engagement in . . . misrepresentations . . . ."  Next, the Complaint contends that these misrepresentations injured Schwartz by serving to deprive him of his shares in Nuclear Solutions, which he thought were being used as collateral—as opposed to being liquidated.

Accordingly, Schwartz has sufficiently alleged that the Moving Defendants proximately caused his injury.

### 3. Particularity Required by Rule 9(b) in a Civil RICO Claim

The Moving Defendants next argue that Schwartz failed to allege in his complaint any fraudulent statements made by the Moving Defendants with the specificity required by Rule 9(b). Rule 9(b) requires that a party alleging fraud or mistake must "state with particularity the circumstances constituting fraud or mistake."  Here, Schwartz explicitly alleges that the Moving Defendants misrepresented what would happen to his shares of Nuclear Solutions.  This allegation soundly meets the particularity requirements of Rule 9(b).

Schwartz's allegation of  proximate cause between the misrepresentations made by the Moving Defendants and the harm he suffered is sufficient to survive a 12(b)(6) motion on his claim that the Moving Defendants violated civil RICO section 1962(c).  Accordingly, the Moving

Defendants motion to dismiss under Rule 12(b)(6) is **DENIED** as to Schwartz's claim that they violated RICO section 1962(c).

### C. 18 U.S.C. § 1962(d)

#### 1. Conspiracy Liability

The Moving Defendants also argue that they cannot be held liable for conspiracy to violate RICO. For the reasons set forth below, the Court disagrees.

To be held liable for "conspiracy to violate RICO under section 1962(d), the conspirator need not himself have committed or agreed to commit the two or more predicate acts[,] requisite for a substantive RICO offense under section 1962(c)." *Salina v. United States*, 522 U.S. 52, 62-66, (1997). To be liable, a conspirator must only "intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, it suffices that he adopt the goal of furthering or facilitating the criminal endeavor, and he need not agree to undertake all of the acts necessary for the crime's completion." *Id.* Accordingly, the Court need only consider whether he properly alleged a substantive RICO violation that the Moving Defendants can be shown to have furthered or facilitated. Thus, it must first be determined whether Schwartz adequately alleged a substantive RICO violation under 1962(c) against the non-moving Defendants.

As previously stated, "[a] complaint asserting a violation under 1962(c) must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima*, 473 U.S. at 496. Schwartz has sufficiently alleged that the non-moving Defendants engaged in "conduct." Schwartz states that the non-moving Defendants represented to him that his stock would not be sold absent default and certain test trades, that the non-moving Defendants executed a loan agreement

-8-

and promissory note with Schwartz, and that the non-moving Defendants sold Schwartz's stock. These acts constitute "conduct" on behalf of the non-moving Defendants.

"An 'enterprise' is defined by statute to include 'any individual, partnership, corporation, association, or other legal entity, and union or group of individuals associated in fact although not a legal entity." *Van Dorn*, 623 F.Supp. at 1553 (citing 18 U.S.C. § 1961 (1999)). Further, "[a] RICO enterprise is an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making. The continuity of an informal enterprise and the differentiation among roles can provide the requisite structure to prove the element of enterprise. *United States v. Johnson*, 440 F.3d 832, 840 (6th Cir. 2006) (citations omitted). Schwartz states that the enterprise at issue here has been associated since "as early as 2002," shares a common money-making purpose in defrauding investors, sets forth profits retained through the enterprise, and sets forth the hierarchy of the enterprise by stating the different roles each member played. As such, Schwartz adequately alleges that an enterprise exists between the Moving and non-moving Defendants.

"In a RICO action, racketeering activity is defined," in relevant part, "as any act which is indictable under any of the following provisions of title 18, United State Code . . . section 1341 (relating to mail fraud), section 1343 (relating to wire fraud)." *Van Dorn*, 623 F.Supp. at 1554. "A 'pattern of racketeering activity' is defined by statute as requiring at least two acts of racketeering activity," as predicate offenses, "one of which occurred after the effective date of this chapter and the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." *Id.* (citing 18 U.S.C. § 1961(5)).

In instances in which a mail or wire fraud claim is asserted as the racketeering activity, Rule 9(b) requires the plaintiff to state the fraud claim with particularity. *Advocacy Org. For Patients and Providers, et al. v. Auto Club Ins. Ass'n, et al.*, 176 F.3d 315, 322 (6th Cir. 1999). The pleading requirements in Rule 9(b) are to provide fair notice to the defendant, such that the defendant may prepare a response to the allegations of fraud. *Id.* Although the Sixth Circuit reads Rule 9(b)'s requirements liberally, the plaintiff is required to allege: the time, place, and content of the alleged misrepresentations; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud. *Id.* (quoting *Coffey v. Foamex, L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993)).

Schwartz alleges the relevant time, place, and content of the misrepresentations with the specificity required by Rule 9(b). Schwartz sets forth the beginning of his encounter with the alleged conspiracy and gives the context in which it was allegedly perpetrated by stating that "[i]n September, 2007, [he] became interested in raising additional capital for his business and made various inquires about financing options. He was referred to a website maintained by Hedge/Lender, on which Hedge/Lender promoted itself as 'the top-rated U.S. specialist in limited-recourse hedge portfolio stock loans over the last eight years.'" Schwartz further alleges the fraudulent content of the principal misrepresentation made by the non-moving Defendants. He contends that after voicing concerns about using his stock as collateral, "Hoekstra represented that the Nuclear Solutions shares would not be sold in the absence of a default, although certain limited test trades would be conducted by the lender to assure itself of the liquidity of the stock." Schwartz also provides the structure and substance of the loan agreement and promissory note that he executed, which governed

his relationship with the non-moving Defendants—including the date in which he executed the loan agreement.[3]

Further, Schwartz alleges the specific date on which his Nuclear Solutions shares were deposited in the non-moving Defendants' trading account,[4] and the date on which the non-moving Defendants told him his loan would be funded. Schwartz avers that he was told by Hedge/Lender that the loan would be funded by October 9, 2007, but his loan was not funded on that date, as promised. Upon realizing that his loan was not funded, Schwartz e-mailed Hoekstra who responded by allegedly stating, "this is to confirm that I spoke with Mike [sic] the wire was indeed being processed this morning. It may take a few hours to get to your bank but the funds will (should) post today. It is now in the hands of the Federal Reserve System." Schwartz then contacted Michael Spillan to further inquire as to the status of his loan and stock, and was told that the Nuclear Solutions shares had *not* been sold. On October 23, 2007, however, Michael Spillan admitted the sale of Schwartz's Nuclear Solutions shares.

With respect to the fraudulent scheme and intent of the defendants, Schwartz states that "[p]ursuant to this scheme said defendants offered corporate and individual borrowers stock secured loans whereby the Spillans' entities, i.e. One Equity, Dafcan, Triangle and Triangle Group, purport to make a loan to the borrower secured by stock which the borrower transfers to a Spillan entity as security for the loan . . . In fact, the purported loans are just a device to obtain the shares to sell for the defendants own benefit and enjoyment."

---

[3]Schwartz executed the loan agreement on or about September 12, 2007.

[4]The 2,300,000 shares of Nuclear Solutions were deposited with Trading Direct/York Securities, by One Equity, on or about October 1, 2007.

Schwartz further alleges that he has been damaged by the fraudulent scheme by arguing that as a direct and proximate result of the Defendants' actions, he has been deprived of the shares of Nuclear Solutions." Through these allegations Schwartz's provides the non-moving Defendants with fair notice of the charges against them, and accordingly, has alleged that the non-moving Defendants engaged in racketeering activity with the specificity required by Rule 9(b).

Schwartz has also sufficiently alleged a pattern of racketeering activity. Proof that a defendant has been involved in multiple criminal schemes is highly relevant to determining whether a pattern exists. *H.J. Inc. v. Northwestern Bell Tele. Co.*, 492 U.S. 229, 240, (1989). Schwartz not only contends that the non-moving Defendants made numerous misrepresentations to him between September and November of 2007, but he also states that both the Moving and non-moving Defendants are involved in similar suits involving their criminal enterprise. As such, Schwartz has alleged the existence of a pattern of racketeering activity. Schwartz has thus sufficiently pleaded a violation of RICO section 1962(c) against the non-moving Defendants.

2. Existence of a Conspiracy

The Moving Defendants next argue that Schwartz failed to allege adequately a conspiracy between them and the non-moving Defendants. "[A] RICO conspiracy count must plead an agreement to engage in specified conduct which would violate RICO. . . ." *Pik-Coal Co. v. Big Rivers Electric Corp.*, 200 F.3d 884, 890 (6th Cir. 2000) (citing *Craighead v. E.F. Hutton & Co., Inc.*, 899 F.2d 485, 495 (6th Cir. 1990), but the agreement need not be expressed and each participant is not required to know all the details. *Collyer v. Darling*, 98 F.3d 211, 229 (6th Cir. 1996). A plaintiff must allege facts showing a single plan existed, that the alleged conspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the

-12-

conspiracy. *Id.* Schwartz argues that: the conspiracy has been associated since as early as 2002; shares a common money-making purpose in defrauding investors; sets forth profits retained through the enterprise; and sets forth the hierarchy of the conspiracy. Further, as already stated, Schwartz alleged the occurrence of an overt act in furtherance of the conspiracy when he stated that the non-moving Defendants substantively violated RICO section 1962(c). Given a deferential reading, as required by Rule 12(b)(6), these averments are sufficient to assert that an agreement was formed between the Defendants to engage in unlawful activity. Schwartz has thus adequately pleaded the existence of a conspiracy between the Defendants.

Schwartz also sufficiently pled that the Moving Defendants "adopted the goal of furthering or facilitating the criminal endeavor," *Salina*, 522 U.S. at 63, by averring that the Moving Defendants were intimately and actively involved in the conspiracy, and specifying the hierarchy of the enterprise. Schwartz has thus adequately alleged a violation under RICO section 1962(d) against the Moving Defendants.

### 3. Standing

The Moving Defendant next argue that Schwartz lacks standing to bring a RICO claim. This argument is without merit. A "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constitution the violation." *Sedima*, 473 U.S. at 496. As stated in the section IV(B)(2), Schwartz sufficiently alleged a conspiracy violation of RICO against the Moving Defendants. This violation allegedly deprived him of his Nuclear Solutions stock, which has a replacement value of approximately $1,495,000. As such, Schwartz suffered an injury to his property as a result of the violation, and thus, has standing to bring a RICO claim against the Moving Defendants.

For the forgoing reasons the Moving Defendants' motion to dismiss under Rule 12(b)(6) is hereby **DENIED** as to Schwartz's allegation that the Moving Defendants violated 18 U.S.C. § 1962(d).

## V. CONCLUSION

For the reasons described herein, the Court **DENIES** the Moving Defendants' motion to dismiss.  As a result of this order, Plaintiff's motion to strike (Docket No. 77) is rendered **MOOT**.

**IT IS SO ORDERED.**


    **s/ Algenon L. Marbley**
**ALGENON L. MARBLEY**
**United States District Court Judge**


**DATE: September 25, 2008.**